Mr. Bray's conviction should at the very least be vacated and remanded for a new trial because the district court plainly erred in its jury instructions. Conviction for criminal insider trading in this case required proof that Mr. Bray traded with knowledge that O'Neill acted in breach of a fiduciary duty, and the government's brief, as I read it, doesn't actually deny that. The district court here, however, told the jury it could convict if it found that Mr. Bray, quote, That wasn't objected to, was it? It was not, Judge Stoll. You're here on plain error review. Plain error review, a very, very high standard. And given the evidence in the case, how do you propose that we should, that you have met that standard? So we certainly think, Judge Stoll, this is a case where that standard is met. First of all, there clearly was error, and the error was one as to which now, to the extent there was any doubt before, the Supreme Court's statement in Selman that the Timmy has to have knowledge makes it clear beyond prevention. With respect to the evidence, there is certainly a basis in the record from which a rational jury could have found that Mr. Bray did not know that O'Neill was breaching fiduciary duty. Well, how can you say that? We have a case where, over a period of time, your client asked the banker for advice on buying stock. And every time, he gave him generic advice. This time, he did something very different. Why isn't that enough? I think it's very important, in praising the evidence, Judge Stoll, to note the difference, which the Supreme Court highlighted in Dirks, between having information that is valuable, or even information which is non-public, neither of which is enough for conviction of a federal crime. And on the other hand, what is required, which is knowledge that the tipper is giving information in breach of a fiduciary duty. And the evidence that Your Honor just mentioned, I think a reasonable jury could infer from that that the information being given was valuable, and could even have inferred that it was non-public. But Mr. Dirks had valuable non-public information as well, and he gave it to clients and investors who traded on it, but he was not even civilly liable, let alone criminally liable, because the information was not given in violation of a fiduciary duty. And what we have here is an admission by Mr. O'Neill on the stand, not only on cross-examination, but in response to a jury question the judge now read to him, saying, Did you tell Mr. Bray, at the time of the tip, that you were involved with due diligence, or anything to do with Wainwright? This is 236 of the appendix, and he is clear beyond pure venture that he didn't mention Eastern Bank as an employer at all. Yes, but your client knew what his job was, and every time previously, it was generic information. This time, it's handed on a napkin, and your client sticks it in his pocket. Isn't that enough? Well, even if the court believes it is enough, Your Honor, that is not the standard for vacator and remand for a new trial based on its instructional error. The standard under this court's decisions is whether a rational jury could have ruled for Mr. Bray on this issue. And the fact that O'Neill admitted he had not told, and certainly Mr. Bray knew he worked for a bank, but he did not know that he was involved in due diligence with respect to the particular bank whose name he had written on the napkin. That is something that a reasonable jury, had it been properly instructed that it had to find actual knowledge, could have ruled in his favor. Now, we think the evidence is not even strong enough to permit a ruling in the government's favor, and that the court could direct judgment on this basis. But even if the court disagrees with that, there's plainly enough to show that his substantial rights were affected, because the jury, as it was instructed, was clearly focused on this issue. It was a major focus of the defense closing. It was mentioned over seven times in closing. The government mentioned the should-have-known standard, using those words in its own closing, and using indistinguishable words in its opening. And notably, this negligence instruction contrasts with what the district judge said on the very next page, page 545, in talking about the personal benefit issue, where it says there's a requirement that Mr. Bray have understood that O'Neill was expecting a benefit. And if the jury was paying attention, which we must assume it was, it would have noticed the contrast between the knowledge requirement that the judge gave him as to personal benefit, and the negligence, much lower requirement, that was instructed as to breach of a fiduciary duty. And if the court doesn't agree that the only outcome a reasonable jury properly instructed could have come to is that Mr. Bray did not know there was a breach of duty, then that means we don't get a right reversal. But we clearly do get a new trial, because a reasonable jury could, on this record, given the admission that O'Neill made twice, once on cross-examination and once with the jury question, that he did not tell Mr. Bray anything about Eastern Bank. He didn't tell him anything about due diligence before the purchase of the purchases. That shows that Mr. Bray could reasonably, and a jury could have found, that Mr. Bray acted on the assumption or belief that Mr. O'Neill was like Mr. Burks, that he had gotten this information, that it was non-public, that it was valuable, that it was worth acting on, but not that there was a breach of fiduciary duty. That is the missing element. We think the government completely defaulted on that issue, frankly, and the judgment for the defendant is appropriate. But even if the court disagrees with that, we think that the vacater and remand, that this is one of those rarely, admittedly, Judge Stahl, but one of the few cases that this court will encounter, where on the one hand, the error is palpable. It's clearly wrong under the law. The substantial rights of the defendant have been affected, and it also affects the fairness and integrity of the trial. We're talking about a 79-year-old man who was going to prison for 10 years on a negligence instruction. That is a sufficient basis for a new trial. I will talk very briefly about the issue. Excuse me, before you turn to that. So I take it, then, that you think that the reference in Solomon II must have known or had to have known.  I mean, of course, that's not an issue that's raised in this case. Just try to understand what instruction you would want. Is it that the tippee knew that the tipper should have known something? Yes, that's the instruction. So the tippee has to understand the scope of the fiduciary relationship. First of all, that there is one, and what the scope of that is, in order for there ever to be a conviction. The tippee has to know that there is a breach of fiduciary duty. I'm not sure that the tippee needs to know the full extent of the duty, but there has to be some understanding. And this can be inferred from circumstantial evidence. There have been cases from this court and other courts where the tipper says, please don't trade on this. I learned this because we're dealing with a special transaction, the Rockledge case, for instance, where it wasn't disputed that there was a breach of duty. I take it that this statement in Selman was not part of the holding? So is it dicta? If it is dicta, it is very well considered dicta, and it certainly shows what the Supreme Court, at the concession and argument of the Solicitor General, thought was the state of the law. Notably, the Solicitor General was making this point in order to rebut the defendant's argument that under the government's position, you have unlimited liability. And the government said, no, no, liability won't be unlimited because we have to prove knowledge of a breach of fiduciary duty. And Justice Ginsburg asked, knowledge you should have known. And the deputy Solicitor General said, no, in a criminal case, we have to prove knowledge. And I don't hear the government is making any other argument here as to what the law actually is. Thank you, Your Honor. Good morning. May it please the Court, Eric Christofferson on behalf of the United States. I'd like to start, if I could, on this issue of the new or should have known instruction. And before we even get to plain error, of course, we've made the argument that this issue is not only forfeited but has been waived. Mr. Bray proposed jury instructions to this court and submitted them a couple of weeks before trial, in which the new or should have known formulation was included. It is true, as he pointed out in his reply brief, that the new or should have known language was written as to Mr. O'Neill's knowledge of his obligations, not Mr. Bray's. That is true. However, I think the only way to rationally understand what happened there was that he simply made a mistake and then got exactly what he asked for. He appears in his instructions to have submitted instructions as to the TIPBRS liability. And, of course, this was a situation about a TIPB's liability. But when he submitted those things, he submitted them in advance of trial, there was a preliminary charge in which the district court said, merely, this is just my preliminary charge. The final charge is the one that counts. Gave the should have known instruction. And then Mr. Bray, in his opening, referred to the should have known as to Mr. Bray's knowledge. Not to Mr. O'Neill's, but he referred to that in his opening. And then, of course, there's the final charge, no objection. And then, again, Mr. Bray refers to the should have known instruction and element in his own closing argument. Now, the other thing I think is. . . But if you characterize that as a mistake, how could it be waiver? No, no, no. I made a mistake in terms of just in terms of how the instructions were written as to TIPBRS liability as opposed to TIPB. But I think he got what he was asking for. And I think that's the rational way to look at what it was that occurred over the course of the charge and with respect to his arguments. So are you making an estoppel argument, in effect? Yes, Your Honor. We're arguing that it's waiver. Not waiver, but estoppel. Well, I think we're making a. . . I think under the case law, Your Honor, it is waiver. And with respect to the issue of having used it in the closing, there is actually a case that this court decided in 1994, Carillo-Figueroa. It's 34 F. 3rd 33, in which among the factors that the court looked at to determine waiver was the fact in that case it was about whether a photo array was admissible or not. In the closing argument, the defendant had referred and invited the jury to look at that photo array in order to assess the credibility of one of the key witnesses. And the court for a circuit in that case said that in inviting the jury in its closing argument to use the thing that he is now complaining of, that is part of why the court decided that it had been waived. Even setting waiver aside, though, I think with respect to the plain error analysis, and Judge Stahl rightly pointed out that it's a very high standard, and Judge Howard alluded to this, we don't concede that this is a clear and obvious error. The state of the law in this circuit, after McPhail, which was decided last summer, was that it is likely error. And notably, in McPhail, this court didn't even hold in McPhail that it was error. It only held that it was likely error, citing Parisian, which was a tip E case, and McPhail was a tip O case. The Supreme Court in Salmon, as I think Judge Howard pointed out, did not hold that the new or should have known instruction. But did the government concede it in that case? Your Honor, I think that certainly was part of it, and I am not going to say that that's not what the SG had said. But in terms of plain error, clear or obvious error, what the state of the law was, in Salmon the court was simply reciting the other elements. It wasn't, for example, examining the fact that other circuits had held, or not had held, but had noted, at least in criminal cases, that should have known was the proper instruction, or at least was an instruction that was given in those cases. The question is whether it's plain now on appeal. Yes, Your Honor, that is true. And the state of the law, I think it is not clear or obvious in terms of the holding. In Henderson, the case in which the Supreme Court decided that you assess the clarity of the error at the time of appeal, specifically talked about that the error plainly has to conflict with a holding. And it explained that the problem arises where there's a new rule of law, and then the law was previously unsettled, and now it is clear. It's hard to say, I don't think you can say, that what the Supreme Court did, as important as dicta is in the Supreme Court's jurisprudence, and we acknowledge this Court considers it, that it could change. We're not allowed to, we have to accept it if it's recent dicta. Isn't that our law? Yes, Your Honor, I would say that that is true, but accepting it for purposes of assessing whether it is error may be a different analysis than the clear or obvious prong. The second prong, there's a reason why those, I think, prongs are separate. There's error, and then there is whether that error was clear or obvious. The kind of jurisprudence around the clarity of an error of this kind in the plain error analysis, if you look at it, including the Benjamin decision that's cited in the reply brief by Mr. Bray, that's where there's been a sea change. Like, for example, in the Benjamin case, the Supreme Court had ruled that materiality was now an element, a required essential element of the bank fraud statute. Or in the Postoline context where there has been a holding that a certain fact that increases the statutory maximum is a required element that needs to be proven beyond a reasonable doubt to the jury, and that's where you see a lot of these holdings. I'm still not following you. The question is whether it is plain today as a result of intervening Supreme Court cases, for example. Are you saying it's not clear today? I would say that given in this circuit, yes, given what was said in McPhail, and that the- McPhail is after Salmon? No, Your Honor. But with respect to what Salmon said, it was not a holding. And so, therefore, it may sort of reinforce certainly what this Court said in McPhail that it was likely error. But in terms of whether it was clear or obvious, we don't think that that is the state of the art. It is clear or obvious now. This isn't a gotcha doctrine. It's whether the law is clear or obvious now at the time of this appeal. Correct, Your Honor. I guess what I would like to say is simply, and I'm sure we can move on to other arguments, was simply that it does not appear that Salmon was resolving an unsettled area of the law. So you're saying clear means a holding. That's the number that is clear. Yes, Your Honor. But with respect to yet, even if we set that aside and we get to the substantial rights effect, even assuming the Court finds that this is clear or obvious error, we think it's important to point out something that was mentioned in the reply brief for the first time we think is not correct. It's important to note in the reply brief that Mr. Bray says that what, assuming that it was error, the error was effectively equivalent to omitting an element. And that's a very important distinction that is not what happened here. What happened here was an allegedly erroneous instruction as to an element. And in Hebshey, which is a 2008 case which we cite in our brief, this Court makes clear that the regular standard of proving prejudice under plain error applies, which is that there's a reasonable probability that, but for the error, a different result would obtain. That's a burden that Mr. Bray has to carry. The standard that he cites in his brief, and which he articulated again today, about whether the evidence could rationally lead to a contrary finding, and citing cases which talk about uncontroverted evidence or overwhelming evidence as being required in order to find that there wasn't prejudice, that relates to a different set of cases where the element was entirely omitted. And that's a very different thing this Court has held repeatedly, that nowhere is the burden higher than when it comes to errors of instruction. And that's what's being alleged here. And being able to prove, given the overwhelming evidence we submit there is on this, with respect to this issue, that Mr. Bray knew, for all of the reasons that Judge Stahl noted with respect to what happened that night in the bar, and the passing of the napkin, and that sort of thing. But also we think critically, when Mr. Bray was approached by Mr. O'Neill for the third time, and Mr. O'Neill had in his hand the notice from Penra and said, I'm going to lose my job. He was worried about losing his job. What did Mr. Bray do? Mr. Bray did not say, why are you going to lose your job? He knew why he was going to lose his job. He said, I had done my research on this bank. And the jury was certainly entitled to conclude fairly and reasonably that what Mr. Bray was saying was, I know you did something you weren't supposed to do. I know that you're probably going to now lose your job. But don't worry. I did my research. I already came up with a cover story. If the regulators come looking, I'm going to tell them that it was a green bank, that there was a branch around the corner of my house. And guess what he did? He did that exact thing when he answered the interrogatories in the civil case. And for all those reasons, among all the others cited in our brief, we think that the court should affirm the conviction. Thank you. With respect to this issue of the holding, this court's decision in Morales, 2015, two years after the Henderson case the government relies on, this court said, quote, the absence of a decision directly on point does not remove the potential for finding a plain error. Instead, the inquiry is always whether the error is open to doubt or question. That's the standard. There doesn't have to be a holding, although we think this is as close as you need to come. This is certainly within the confines of what Morales talks about for purposes of a plain error. This notion of waiver, I mean, certainly there's no waiver in the appellate sense of the word. We raised this in our opening brief. The government has responded to it. We've argued it. It was not raised below. We recognize that. That's why we're arguing plain error. But there isn't the kind of, whether you call it a stopple or something else, that would bar even plain error review in this context. The reference to the closing argument, the government has not cited a single case suggesting that if counsel stands up and argues based on a standard that the district court has already instructed on in the opening charge, that that somehow omits the legal correctness of everything that's said in the opening charge and makes it impossible to argue even plain error review afterwards. With respect to this issue about omitting an element, I mean, we are arguing that there is an omitted element here, the element of knowledge of a breach of fiduciary duty. The government seems to be saying that as long as there's some kind of mens rea argument, that that's good enough. And maybe they could have said articulable suspicion or something very, very low. That's not what the law is. This court has been very clear in Stern and in other cases that mens rea is critical in criminal cases, and the court should be very wary of finding errors in mens rea instructions to be harmless. And in this situation, they're not. The standard for plain error did not come up for the first time on reply. On page 39 of the blue brief, we quote Benjamin, the standard is when the record contains evidence that could rationally make it come to a contrary finding with respect to the omitted element. And if I may finish the sentence, Ron, I wrote down carefully when Mr. Christopherson made the point. His main point to this court is that the jury would have been entitled to find that Mr. Bray knew of a breach of duty, but that is not the standard. The question is could the jury rationally have found in favor of Mr. Bray had it been properly instructed? The answer to that question is plainly yes. The judgment should be reversed or at the very least vacated and remanded. Thank you. Thank you, Your Honor.